Good morning, everybody. We have three cases for argument this morning. This panel is going to hear the first two, and then we're going to take a brief recess, and then the third case will be heard by a slightly different panel.  Good morning, Your Honor, and may it please the Court. We'd first like to spend a little bit of time just to go over the general purpose of Mr. Macor. He's the inventor of his invention. Basically the purpose was to provide easy access to detailed digital images of collectible objects which provide detailed appearance characteristics of the collectible object. It's a little bit of a tortured read, but every word is actually very important. It allows for easily accessing and comparing detailed digital images of the unique appearance characteristics of the collectible objects. The example used in the application extensively is a coin collection where the collectible object would be a coin. Examples are given of what these detailed unique appearance characteristics would be for a coin. For the coin, for example, these details would be things like strike, luster, reflectance, color, defects, abrasions, centering, something called reading, which is basically edge characteristics, dye varieties, tonings, and a few others. The idea is if you take any two coins, even if they are minted at the same time through the same minting process, the same machinery, and you looked at them under magnification so you could see the detail, there would be minor detail differences. In fact, these unique, that's why he called them unique detailed appearance characteristics, they act like a fingerprint, as it were, so that it can authenticate the coins themselves. So, for example, in the invention, he would take a detailed digital image of a coin and store it so that it could be recovered, and then at a future date if someone wanted to authenticate whether that particular coin is the coin that they have in their hand, all they have to do is pull up the detailed digital image and compare it with the coin in their hand, and they would be able to see if these unique characteristics, appearance characteristics, showed any difference or not. In the main prior art cited, which is DeFabio, it's US patent number 6250549, the basic invention there was a system for authenticating signatures, a system capturing the image of an individual signing an article. The resulting product, including the captured image, included the captured image and the signed article itself. The example used in DeFabio throughout, it can apply to sports. As I understand it, your main argument is that we had a situation of improper hindsight analysis here, correct? Yes, Your Honor. And, I mean, I think you don't dispute that all of the elements are taught in these three pieces, but it was improper for the board to approach it the way it did, is that correct? Well, improper hindsight reasoning does come in with the incorporation of Rostenpohr, another reference, into DeFabio in a one of three... Rostenpohr had a flash drive, correct? Rostenpohr had a... That's what was brought in, I guess, to substitute for the disk of DeFabio, correct? Right, the data storage. Rostenpohr had a different data storage device than DeFabio, but we are getting to that. I just wanted to lay out the idea because I know when you read these disclosures, when you read something about unique appearance characteristics, it doesn't necessarily strike in your head that you're looking at a blown up image of a coin and you're seeing the little things that are on it that are different from another coin of a similar aspect. I just wanted to kind of frame the whole picture of what we're looking at. Can I ask you a housekeeping question? Yes. I'm curious about what the issue is that you are raising with respect to... or if you're asking us to address amended claims one and three through nine where the examiner said that the amendment could not be entered. Well, I was going to hit on claims one and three through nine. How can we consider those claims when the patent office hasn't considered them and has said that they're not properly admitted given the board's first decision? Well, I was going to hit that at the end, but that's okay. We'll do it right now. The history with those claims are it was originally claims one through nine. I'm familiar with the history. We're familiar with that. Right. And then we got to the first patent trademark trial and appeal board decision, which at the very end of the decision invited the applicant, the appellant, to reopen prosecution, quote unquote, by filing an amendment. And it did not specify you could only reopen prosecution of claims 10 through 20. It literally said one of the options for the applicant... Certainly that the NPEP and other documents provide some clarity that when the board agrees or affirms an examiner's rejection on some claims but not others and reopens prosecution, it would only be the claims that the board reopened prosecution on. If that were the case, then what claims should we be looking at? Because I think that was the board's position and the PTO's position, right? Yes, Your Honor. The problem was that it was our opinion, and I believe it's pretty clear that there was an error made by the board in denying claim two. I guess I'm just trying to figure out what you're arguing because I see where your brief is directed to asking us. It's directed toward asking us to determine the patentability of claims one and three through nine. Yes. But I don't know how we can raise that or consider that. Maybe you're asking us to determine whether the board erred in its analysis of original claims one through nine because you think original claim two wasn't considered. I just can't tell from your brief what it is you're arguing to us. So could you just tell me the issue that you're raising? Well, I mean, I think in the appeal, basically we incorporated claim two into claim one when we did the amendment that was invited by the appeal board decision. So that's the only issue you're raising for us is for us to consider claims one and three through nine? Yes. Yes, Your Honor. We're just interested in one and three through nine. We think the original decision. So you're not appealing the decision on 10 through 20? Oh, no, we're appealing 10 through 20, absolutely. I didn't mean to suggest that, but I want to know if you're appealing the board's first decision on claims one through nine. I don't see it in your brief, but I want to give you the opportunity to clarify that. So you're not, despite the solicitor's suggestion that you could have appealed the first decision on one through nine, you're not challenging that decision before us? You're saying that it was air for the examiner not to enter the amendments and consider the patentability of those claims? Absolutely, Your Honor. The history after that was that the examiner rejected our amendment saying that the board had closed prosecution on one through nine. We're familiar with the history. I don't want to take all your time if you want to discuss the merits. Thank you, Your Honor. To skip ahead just a little, to catch up a little, our points now, instead of my client MAKOR's unique appearance characteristic of the collectible object for authentication being looked at, and DeFabio were teaching a unique identifying indicia, an identifying code that's put onto the object. And that's how they tried to avoid someone counterfeiting it or something of that sort. And also very important with DeFabio is that it requires that a person be videoed or imaged signing an object. Now, under the 103 rejection, because what you're basically saying in a 103 rejection is that you're going to look at the primary reference, DeFabio, and you're going to modify it in an obvious way to see if it fits with the application in question. You're into your rebuttal. Do you want to say something? You can go on, but you've got about four minutes left. No, that's fine. I just wanted to point out that the – oh, I'm interrupting. You're into your rebuttal. That's fine. We'll use the time now. It's important to get these things out, in our opinion. But anyway, the – if you modify DeFabio to be more like Mr. Maykor's invention, the first thing you do is get rid of any kind of care about someone signing something or an autograph. You throw out – there's no video of someone signing something because Mr. Maykor does not care if there's any video of someone signing something. If you're looking at the signed article, that might be different. After it's been signed, now we can image it with a high-detailed image, and we could see if the substrate has nooks and crannies that were there originally, that sort of thing. But we don't care about someone signing it. Also, with DeFabio's invention, you can't – there's no way to take an ancient coin and authenticate it because you don't have any video around of anyone signing it. And every single embodiment of DeFabio, every claim of DeFabio requires, as an element, that someone sign and it be videoed or imaged, period. So if you take away that from DeFabio, you don't have anything left of DeFabio. It stops working as a reference entirely. And outside of that, DeFabio basically is authentication of an autograph, and we are authentication of collectible devices – not devices, collectible objects, I'm sorry. And then we have other objections to DeFabio. We're almost out of time. Other objections to DeFabio, which, beyond the problem being solved and how it's solved, we also – DeFabio lacks an important aspect to us, is the tamper-resistant visual markings. And we define in the specification what that means. We don't leave it out there as a label with printing on it. That's not tamper-resistant visual markings in our book. So in looking at your claims, when you have the language, one collectible object, that would not include something that's signed by a famous person? Oh, it could be, but we would look at – we would image the object closely, and we would look at essentially detailed high-res images of this, and we would be able to see if there are minor changes from what it should be. And that's the immutable digital image of at least one unique appearance characteristic in the claim. Exactly right, exactly. And whereas DeFabio would show you a picture of someone signing that object, which proves that he signed an object, but it doesn't prove that the one you're holding is the one that was signed even. It doesn't even go that far, because we're not dealing with totally detailed objects. The perfect example is the baseballs. You might have an athlete sign 1,000 baseballs, and you have a video of him signing a baseball. That doesn't mean the one that you have in your hand, even if it has a serial number on it, is really the one he was signing when they took the video. But with our invention, once you've authenticated an object, even that baseball, now we have microscopic images, and we can see every nook and cranny in the leather that surrounds the baseball. And we can see every little— Mr. Ponceca, you've completely exhausted your time. So why don't we hear from the government? I'll give you a minute back on rebuttal. Thank you, Your Honor. Good morning, Your Honor. I'm just going to make two quick points here. First, that appellant has not argued any prior limitations in the briefing. The thing that somewhat bothers me about this case is the procedural aspect of what seems to be a dispute between the board and the solicitor's office about the appealability. And, you know, it seems to me you probably have the better position, but how is he to know that on appeal, after a board decision that said he couldn't— you know, he was too late to appeal the original 1-9 decision, that he should have filed an appeal here on 1-9? I'll address that by first saying that in preparing for argument, I reread the board's decision, and I think I may have overread the footnote. So let me—can I just make sure I have this straight? In the first board decision, they affirmed the examiner on 1-9, and then they allowed for reopening prosecution on the remainder claims. Is that right? And it went back. They tried to amend the earlier ones. The examiner took the position, no, they're final, and then heard the new arguments on the reopened ones, went back up to the board, and the board said, we're not going to hear anything about your amended 1-9 or whatever they are because that was final. That's correct. And they didn't raise any arguments to the board about the propriety of the original 1-9 decision. That's correct, yes. But they could have. So— That's what I'm confused about. Does the board think that they could have— I mean, they would have probably just reached the same decision, but could they have at least somehow preserved the original 1-9 claims, the arguments to them for purposes of appeal to us? Yes, I think so. The board was correct in saying that they could have filed a request for a re-hearing or petitioned the director during the process before the second appeal.  Just to have the board— Re-hearing and reconsideration for what? To have the board look again at the first board decision. But they didn't have to, did they? They didn't have to. That was my over-reading. They didn't have to. Right. I mean, it would seem kind of odd that if it's a final decision, that it's not subject to appeal at some point, maybe not immediately because the first decision was not completely final. That's correct. So actually— So I get all of this. I think that seems to make sense that they could have appealed the original decision on 1-9 here, but how were they to know that? Because the board's decision is kind of confusing on that. The MPEB addresses this in 12.14.01, I believe, is the MPE section that I cited. And it addresses this very rare situation in which the board affirms some claims and issues a new round of rejections on the other. And it says in that section that the claims on which the rejections were affirmed are on hold until the disposition of the new grounds claims bubbles back up to the board. And then when the board issues the second decision, if the claims are rejected and the board affirms that rejection, then the two sets of claims come back together and are ripe for judicial appeal to this court. And it does say that in the MPEB. The regulation, the CFR—37 CFR 4150— Why was the board talking about the suggestion that they could have filed a motion for reconsideration? It sounded like they didn't need to. I believe the board was just explaining the opportunities they had to have the board hear again the unamended claims and hear again any arguments or, you know, misapprehensions of law. And so they were explaining, we're not going to hear this, the same arguments on unamended claims 1 through 9 on the second appeal. Unless you ask us to do it again. Unless you ask us in a request. So I don't think they were talking— Your position is that that request to do it again is not a prerequisite to judicial review here. Correct. That is our position. The court has no more questions. I yield my time. Thank you. Did you want to make any points on the merits of the case? The only—sorry. Thank you. The only point I wanted to make was that appellants have not argued any prior art limitations, and so any argument here on the prior art limitations has been waived. Thank you. Mr. Ponceca, you have a minute. Oh, just very briefly around the—when—just so you have an understanding of what was going on on our side after that first KTAB appeal decision. We had a discussion. We were definitely going back, you know, with an amendment anyway on claims 10 through 20. So myself and the client sat down, and we looked at it and said, well, we're going to be in front of the court anyway. And, you know—I mean, not the court, I'm sorry, but the appeal board anyway. So why not let them, you know, address what looked like a clear error on their part? But what about that they thought that they had already addressed it? They thought that they had already addressed those claims. The examiner made a rejection, and the board addressed the rejection and said that it was properly entered. Well, that's where the rejection of Claim 2, for example? I'm talking about claims—I understand you have an argument on Claim 2, but I guess I was just trying to understand—just think about it from the board's perspective that they had already considered and made a final decision on Claims 1 through 9. Oh, I understand that's what they thought, and by all means, maybe that's the way it has to be. But we didn't understand it from the decision itself. When we read it, we looked and we saw that they were inviting us to reopen prosecution. In so many words, they were doing it, and they didn't put any limitation on which claims it applied to at all. So it looked like an open invitation to reopen prosecution, and so we took advantage of that. And the only thing I have found, and that MPEP reference kind of escapes me, I didn't really—if I saw it, I didn't think it was applicable. It's a little bit twisted. What about—can I ask you a question? I hear what you're saying, but what about how it says, reopen prosecution, submit an appropriate amendment of the claims so rejected, referring back to the claims where there was a new ground of rejection? Oh, well—but they also rejected Claims 1 through 9, Your Honor, so I thought so rejected meant the rejected claims, which was all of them. Okay. Your time has expired. Thank you. Thank you.